UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ORIGIN GPS, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION No. 3:25-CV-3383-B** |
| | § | |
| **QUALCOMM INCORPORATED,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Qualcomm Incorporated ("Qualcomm")'s Motion to Dismiss (Doc. 12) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff Origin GPS, LTD. ("Origin") filed a response (Doc. 19), and Qualcomm filed a reply (Doc. 20). For the reasons that follow, the Motion is **GRANTED in part**.

### I.

### BACKGROUND

Origin owns U.S. Patent No. 10,037,300 (the "'300 Patent") and U.S. Patent No. 10,353,854 (the "'854 Patent"). Both the '300 Patent and the '854 Patent are titled "Cloud Programming Sensor Interface Architecture." *See* Doc. 1-1, '300 Patent, 1[1]; Doc. 1-2, '854 Patent, 1. Both patents relate "generally to an integrated circuit for controlling sensors and more particularly to an integrated circuit that serves as a generic interface for controlling sensors by commands from a remote server." Doc. 1-1, '300 Patent at 1:12–16; Doc. 1-2, '854 Patent at 1:14–18. The patents "include [a] wireless communication ability to communicate with a network and an I/O interface to electrically connect

[1] The page numbers referenced are generated by the ECF system.

with sensors or sensor controllers." Doc. 1-1, '300 Patent at 1:59–61; Doc. 1-2, '854 Patent at 1:61–62. Essentially, this technology enables an integrated circuit (also commonly known as a chip or microchip) to communicate information to an application that is executed by a server. *See generally* Doc. 1-1, '300 Patent (describing the relevant technology).

Origin initiated this lawsuit asserting Qualcomm created and sold products (IoT processors[2]) that infringe both the '300 Patent and the '854 Patent. *See* Doc. 1, Compl., 6-8 (describing Origin's allegations with respect to Qualcomm's processors). The '300 Patent has 18 "claims," or distinct inventions covered by the patent; the '854 Patent has 16 claims. *See* Doc. 1-1, '300 Patent at 9:14-12:48; Doc. 1-2, '854 Patent at 9:13- 10:54. In its Complaint, Origin alleges that Qualcomm has "infringed, and continues to infringe, at least Claims 1-18 of the '300 Patent, and/or claims 1-16 of the '854 Patent under 35 U.S.C. § 271(a)(b) and/or (c)." Doc. 1, Compl., 9. Origin asserts claims for direct patent infringement, indirect patent infringement, contributory patent infringement, and willful infringement. *Id.* at 11-14. Origin's Complaint provides claim chart comparisons of language from Claims 1 and 9 of the '300 Patent and Claim 1 of the '854 Patent with material from Qualcomm's webpages advertising Qualcomm's Dragonwing chips. *See generally* Docs. 1-3, 1-4 (containing the claim charts). Qualcomm filed a motion to dismiss, arguing that Origin failed to state a claim on all counts. Doc. 13, Br. Mot., 1. The Court considers Qualcomm's Motion below.

[2] IoT refers to the "Internet of Things," or "semi-autonomous devices" that "sense the physical world" and connect to the internet. *See* Chief Info. Officer, U.S. Dep't of Def., DoD Policy Recommendations for The Internet of Things (IoT) 1-3 (2016), https://dodcio.defense.gov/Portals/0/Documents/Announcement/DoD%20Policy%20Recommendations%20for%20Internet%20of%20Things%20-%20White%20Paper.pdf [https://perma.cc/D36G-MWH9] (defining "IoT"). IoT combines devices and Internet access such that the devices "connect to the Internet" and "[w]ith their sensor and activation capabilities, they establish relationships between the digital and physical worlds that did not previously exist." *Id.* at 1.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). While the Court "applies the Federal Circuit's binding precedent to the 'substantive issues of patent law' arising out of [a party's] claim for direct patent infringement," the law of the Fifth Circuit applies to procedural issues. *DPF Alternatives, LLC v. DET Diesel Emission Techs., LLC*, No. 24-CV-1953, 2025 WL 1908170, at *2 (N.D. Tex. July 10, 2025) (Boyle, J.) (citing *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015)). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration omitted) (citation omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires more than just a sheer possibility that the defendant has acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556). When well-pleaded

facts fail to meet this standard, "the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (citation omitted).

In the patent-infringement context, dismissal of a plaintiff's claims may be appropriate where "the plaintiff merely recites that the defendant infringes a claim limitation but fails to identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation." *Soar Tools LLC v. Mesquite Oil Tools, Inc.*, No. 5-19-CV-243-H, 2021 WL 3030066, at *4 (N.D. Tex. July 2, 2021) (Hendrix, J.). And under Fifth Circuit precedent, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Nix v. Major League Baseball*, 62 F.4th 920, 928 (5th Cir. 2023) (citation omitted).[3]

## III.

## ANALYSIS

The Court concludes that Origin has stated a claim for direct infringement, but not indirect or willful infringement. The Court considers each claim in turn.

---

[3] The Court declines to adopt the Federal Circuit's rule in *Bot M8 LLC v. Sony Corporation of America* that Origin cites regarding patent infringement pleading standards. 4 F.4th 1342, 1352 (Fed. Cir. 2021) (holding that plaintiffs are "not required to plead infringement on an element-by-element basis"). As the Federal Circuit itself recognizes, the law of the regional circuits applies to matters of procedure. *See Soverain Software LLC*, 778 F.3d at 1314. The Fifth Circuit has not stated that plaintiffs are excused from pleading sufficient facts on an element-by-element basis. In fact, in other contexts, the Fifth Circuit has said exactly the opposite. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (holding that a plaintiff must "plead sufficient facts on all of the ultimate elements" of his disparate treatment claim to have a plausible claim); *Peykoff v. Cawley*, No. 24-10186, 2025 WL 1380070 (5th Cir. May 13, 2025) (affirming district court's dismissal of plaintiff's state law claims where amended complaint "lacked sufficient allegations as to required elements of each of those claims"). In other words, Fifth Circuit precedent does not support the standard invoked in *Bot M8* that the complaint need only "place the alleged infringer on notice of what activity . . . is being accused of infringement." 4 F.4th at 1352 (citation omitted). Further, even if the Court were to adopt this standard, the result would be the same for the reasons explained below.

A. *Origin Stated a Direct Patent Infringement Claim.*

Origin alleges that Qualcomm has infringed "at least claims 1–18 of the '300 Patent, and/or claims 1–16 of the '854 Patent." Doc. 1, Compl., ¶ 34. A party directly infringes a patent when it "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. §271(a). Further, "[a]n accused product only infringes a patent claim if every claim limitation is present in the accused product." *DPF Alternatives, LLC*, 2025 WL 1908170, at *2.

A plaintiff can use just one claim per patent to plead infringement: "A plaintiff may plausibly plead a cause of action for direct patent infringement by providing the asserted patents, identifying the accused products 'by name' and 'attaching photos of the product packaging,' and alleging that the accused products meet 'each and every element of at least one claim.'" *Id.* at *3 (alteration omitted) (quoting *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 499 (W.D. Tex. 2023)). Therefore, Origin must allege sufficient facts to suggest that it is plausible that Qualcomm's accused products contain every element of at least one claim of the '300 Patent and one claim of the '854 Patent.

In its complaint, Origin reproduces the '300 Patent and the '854 Patent in full. *See* Doc. 1-1, '300 Patent, 1–12; Doc. 1-2, '854 Patent, 1–11. It identifies several of Qualcomm's allegedly infringing products and uses Qualcomm's Dragonwing QCS4290 processor as a representative example of an infringing product, providing photos of the QCS4290 processor descriptions from Qualcomm's website. *See* Doc. 1, Compl, ¶ 25; Doc. 1-3, '300 Claim Chart, 1-22, Doc. 1-4, '854 Claim Chart, 1-11. Additionally, Origin provides a claim chart for Claims 1 and 9 of the '300 Patent and Claim 1 of the '854 Patent. *See id.* For each of these three claims, Origin compares every claim

limitation with the QCS4290 processor, concluding that each limitation is present within the representative example. Origin does not allege that each of the accused products are identical to the QCS4290 processor, but that "any differences" . . . "are not material to the infringement analysis." Doc. 1-3, '300 Claim Chart, 1. The parties do not contest the use of the QCS4290 processor as a representative example of the accused products, so the Court will assume without deciding that it serves as an appropriate representative example.

In response, Qualcomm argues that "Origin's direct infringement allegations are deficient because Origin fails to state *how* Qualcomm's accused products infringe every element of each asserted patent claim." Doc. 13, Br. Mot., 1 (emphasis added). It asserts that Origin's claim charts simply "repeat the claim language and allege, in conclusory fashion, that the limitations are met without stating how the accused products meet those limitations." *Id.* at 7. To illustrate the conclusory nature of the allegations, Qualcomm addresses three claim limitations recited in the claim chart for the '854 Patent. *Id.* Qualcomm then argues that similar deficiencies exist as to all the claims. The Court disagrees.

The Court considers Qualcomm's arguments regarding the deficiencies in the three claim limitations in the '854 Patent. Then, it addresses Qualcomm's argument that all claims are similarly deficient.

i. <u>The Three Limitations in the'854 Patent Allege Sufficient Facts to State a Claim.</u>

Qualcomm attacks the specificity of Elements 1.c.iii-v in the '854 Patent claim chart. Doc. 13, Br. Mot., 8.

First, as to Element 1.c.iii, Qualcomm argues that the claim language is inconsistent with Origin's explanation of infringement. *Id.* Element 1.c.iii provides that the processor "receive[s]

commands for the sensors from the application executed by the server." Doc. 1-4, '854 Claim Chart, 10. The claim chart alleging infringement states that the QCS4290 processor was programmed "to relay commands to sensors connected to the chip from the application executed by the server." *Id.* To show direct infringement, Qualcomm argues, Origin's claim chart should have alleged that the processor *received commands from* the sensors rather than allege that the processor *relayed commands to* sensors. Doc. 13, Br. Mot., 8.

This, however, misstates the claim chart, as Origin points out. Doc. 19, Pl's. Resp., 9-11. The complaint and claim chart allege that both processors relay commands to sensors from applications executed by the server, or something like an internet-connected cell phone. For example, the Complaint provides that the processor would allow a user to control a video camera, or sensor, remotely from an app on their smartphone that could connect and send signals to the processor in the camera. Doc. 1, Compl, ¶ 33. The claim chart supports the same conception of data flow, describing how the QCS4290 processor relays commands to sensors from the application. Doc. 1-4, '854 Claim Chart, 10. Thus, Qualcomm fails to show the deficiency in Element 1.c.iii of Claim 1 of the '854 Patent.

Next, Qualcomm attempts to show that Origin's allegations regarding Element 1.c.iv of Claim 1 of the '854 Patent are not specific enough to state a claim. Doc. 13, Br. Mot., 8-9. The claim in the '854 Patent states that the processor would be programmed to "transfer the command content *as is* to the I/O interface for relaying to the specific sensor." Doc. 1-2, '854 Patent, 11 (emphasis added). Qualcomm argues that the Complaint does not contain allegations about how the accused products "transfer the commend content *as is* to the I/O interface for relaying to the specific sensor."

*Id.* at 8 (emphasis added). Nothing in the claim chart mentions an "as-is" transfer. Doc. 1-3, '300 Claim Chart, 10; Doc. 1-4, '854 Claim Chart, 11.

Notwithstanding the semantic difference between transferring content and transferring content "as is," the Court agrees with Origin that its allegation is sufficient because it points specifically to the ability of the Qualcomm processor to relay commands to one or more sensors. As referred to in Element 1.b of the chart, the processor is responsible for transferring commands to the sensors via the I/O interface (shown in the screenshot in Element 1.Pre). Doc. 1-4, '854 Claim Chart, 1-6, 11. Origin need not prove that the content is transferred "as is" at this stage in the litigation—rather, given all favorable inferences, it must only be plausible that there is an "as is" transfer. *Twombly*, 550 U.S. at 570. Based on the information alleged, the Court finds that such transfer is plausibly alleged.

Lastly, Qualcomm argues that Element 1.c.v insufficiently alleges infringement because it lacks "sufficient factual detail and too closely track[s] the claim language." Doc. 13, Br. Mot., 7 (citing *Lemko Corp. v. Microsoft Corp.*, No. 3:22-CV-363-L-BT, 2024 WL 379821, at *5 (N.D. Tex. July 29, 2024) (Rutherford, M.J.), *report and recommendation adopted sub nom. Lemko Corp. v. Microsoft Corp. & Affirmed Networks, Inc.*, No. 3:22-CV-363-L, 2024 WL 3806350 (N.D. Tex. Aug. 13, 2024) (Boyle, J.)). While Origin did not directly respond to Qualcomm's arguments relating to Element 1.c.v, it did argue that the claim charts as a whole provide sufficient detail to state a claim. Doc. 19, Pl's. Resp., 8.

Regardless of Origin's briefing, the Court ultimately finds that Qualcomm's arguments related to Element 1.c.v. are also unpersuasive. While Origin does copy large portions of the claim limitation language in its direct infringement allegation, it also alleges that the QCS4290 processor

receives data from the sensors and sends it to the server: "The IC controls receive[] information from the sensors in order to return information to the user. This is done via the server . . . ." Doc. 1-4, '854 Claim Chart, 10-11. Based on the prior descriptions of the processor promising "dynamic camera capabilities" and IoT applications, the level of detail is sufficient to allow the reasonable inference that the processor plausibly returns data from the sensors to the server in the manner described in Element 1.c.v. *See id.* at 1 (containing the screenshot of Qualcomm's description of the QCS4290 processor).

In sum, the specific claim limitations Qualcomm focuses on in its motion (Elements 1.c.iii-v) are not deficient.

ii. <u>Origin's Allegations are Sufficiently Specific as a Whole to State a Claim for Direct Infringement.</u>

To the extent Qualcomm argues that the remaining claim chart elements are deficient because they contain the same conclusory lack of detail that Elements 1.c.iii-v did, the Court will consider Qualcomm's arguments above to apply to the remaining limitation descriptions. Even so, all of Origin's direct infringement claims may proceed. Origin has done more than simply recite the claim elements and merely conclude that the accused products have those elements. *See Iqbal*, 556 U.S. at 678. Origin has reproduced Qualcomm's own advertisements for its QCS4290 processor, and it has compared specific aspects of the advertised product to its own patent in its claim charts. *See* Docs. 1-3, '300 Claim Chart, 1-4. Origin alleges sufficient factual detail based on the claim charts as a whole and produces enough information regarding the Dragonwing processor to survive a 12(b)(6) motion and state a plausible claim for relief.

Qualcomm fails to convincingly argue that Origin's complaint is similar to the complaint dismissed in *Soar Tools, LLC v. Mesquite Oil Tools, Inc*, No. 5:19-CV-243-H, 2021 WL 3030066 (N.D.

Tex. July 2, 2021) (Hendrix, J.). *See* Doc. 19, Pl's. Resp., at 7-8. In *Soar Tools*, the plaintiff did not identify any "pictures or schematics of the part" that it alleged infringed its patent. 2021 WL 3030066, at *6. In contrast, here, Origin illustrates how Qualcomm's products allegedly infringe by providing arrows and highlighted text accompanied by descriptions of how the product infringes that element. *See, e.g.*, Doc. 1-3, '300 Claim Chart, Doc. 1-4, '854 Claim Chart.

Thus, taking the factual allegations as true, Origin's direct infringement claims cannot be dismissed. Origin has provided Qualcomm with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

*B. Origin GPS Failed to State an Indirect Infringement Claim.*

A plaintiff can only prevail on claims of induced and contributory infringement if it establishes direct infringement. *See Lemko*, 2024 WL 3798217, at *6. Because the Court established above that Origin has stated a claim for direct infringement, it will now analyze Origin's remaining infringement claims.

"There are two types of indirect patent infringement: contributory infringement (defined by 35 U.S.C. § 271(c)) and induced infringement (defined by 35 U.S.C. § 271(b))." *Beneficial Innovations, Inc. v. Advance Publications, Inc.*, No. 11-CV-229, 2014 WL 12603492, at *2 (E.D. Tex. Jan. 6, 2014). Contributory infringement is defined by 35 U.S.C. § 271(c).[4] Importantly, contributory infringement requires a knowledge element—the patentee must show that "the accused

[4] "Whoever offers to sell or sells . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

infringer had knowledge of the patent in suit." *Promotional Techs., LLC v. Facebook, Inc.*, No. 11-CV-3488, 2012 WL 13026789, at *4 (N.D. Tex. Sept. 27, 2012) (Solis, J.).

Induced infringement is defined by 35 U.S.C. § 271(b): "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second, that the alleged infringer *knowingly* induced infringement and possessed *specific intent* to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (quotation omitted) (emphasis added). "Specific intent" means that the infringer either had actual knowledge of the asserted patents or acted with willful blindness of the asserted patents. *See Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 725 (W.D. Tex. 2022).

iii. <u>Qualcomm Lacked Pre-Suit Knowledge of the Patents.</u>

Both induced infringement and contributory infringement require a knowledge element. Here, Origin's pleadings do not satisfy the knowledge element for either claim. Origin concedes that Qualcomm lacked pre-suit knowledge of its patents. Doc. 1, Compl., ¶¶ 29, 36; Doc. 19, Pl's. Resp., 13. Notwithstanding the lack of pre-suit of knowledge, Origin argues, its post-suit allegations cannot be dismissed because it alleges that Qualcomm has continued to infringe the '300 and '854 Patents even after learning of them upon service of the complaint. *Id.* at 13-14. How does Qualcomm continue to infringe? By "providing the products with instructions which induce others to use the method." Doc. 1, Compl., ¶ 27. In essence, Origin's indirect infringement claims assert that by selling their products, Qualcomm is acting with the specific intent to infringe Origin's asserted patents. Doc. 19, Pl's. Resp., 12. The Court disagrees.

While courts in this District have held that a lack of pre-suit knowledge is not necessary for indirect infringement claims, they have only done so in the context of allegations based on conduct occurring *after* the defendant received the complaint alleging infringement. *See Seven Networks, LLC v. Motorola Mobility LLC*, No. 3:21-CV-01036-N, 2022 WL 426589, at *12 (N.D. Tex. Feb. 10, 2000) (Godbey, J.); *ZitoVault, LLC v. Int'l Bus. Machines Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971131, at *3 (N.D. Tex. Mar. 29, 2018) (Lynn, J.) (concluding plaintiff stated a claim for post-suit indirect infringement where the parties did not dispute that the complaint sufficiently stated such a claim based on post-suit conduct). In other words, a lack of pre-suit knowledge does not hinder indirect infringement claims where the plaintiff's allegations are based on conduct occurring after the complaint is served on the defendant.

Here, Origin does not allege with any specificity post-suit conduct—only that Qualcomm has sold its own products without any allegation that Qualcomm was on notice of the patents. The Court does not find that this is enough to plausibly allege contributory or induced infringement. For this reason, Origin's indirect (induced and contributory) infringement claims are dismissed because they do not plausibly allege any knowledge tied to conduct occurring either before or after the service of the complaint.

C. *Origin GPS Has Not Stated a Willful Patent Infringement Claim.*

To state a claim for willful patent infringement, plaintiffs must plausibly allege that: "(1) the defendant knew of the patent sued upon; (2) the defendant infringed the patent sued upon after learning of it; and (3) the defendant knew or should have known that its conduct constituted patent infringement." *David Austin Roses Ltd. v. GCM Ranch LLC*, No. 3:24-CV-0882-B, 2025 WL 1583375, at *2 (N.D. Tex. June 4, 2025) (Boyle, J.). Willful patent infringement allows plaintiffs to claim

enhanced damages, though the "subjective willfulness of a patent infringer" must be "intentional or knowing." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016).

In support of its willful infringement claim, Origin states that Qualcomm 1) has been infringing its asserted patents since the service of the complaint in this case, 2) lacks a "good faith defense" to the infringement allegations, and 3) "intentionally" continues to knowingly infringe. Doc. 1, Compl., 11. But Origin does not allege any facts to support its allegations. Without facts allowing the Court to make a plausible inference in its favor, Origin fails to state a claim for willful infringement. *See Iqbal*, 556 U.S. at 678.

Origin's willful infringement claims are also inadequate as a matter of law based on the same lack of pre-suit knowledge analysis discussed above in the context of indirect infringement. Origin fails to show not only how Qualcomm acted willfully in the past, but also how it could possibly be acting willfully after the service of the complaint. Origin does not even attempt to specify any willful infringement based on post-suit knowledge in its complaint; thus, its willful infringement claims must be dismissed under Rule 12(b)(6).

*D. The Court Grants Leave to Amend.*

Under Federal Rule of Civil Procedure 15(a), leave to file amended complaints "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Given the liberal nature of this standard, a "motion to amend ordinarily should be granted absent some justification for refusal." *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). Because Origin could not allege post-suit conduct prior in its complaint, and it has not amended its complaint thus far, the Court finds that a motion to amend would be in the interests of justice. To the extent that Qualcomm wishes to amend its complaint to allege post-suit infringement, the claims are dismissed without prejudice and

Qualcomm may amend its complaint on or before November 12, 2026 to provide more specific allegations relating to post-suit conduct.

## IV.

## CONCLUSION

Qualcomm's motion to dismiss is **GRANTED in part** with respect to Origin's claims regarding indirect and contributory infringement. The motion is **DENIED** with respect to Origin's direct infringement claims. The Court further **GRANTS** Origin **LEAVE** to amend its complaint by November 12, 2026, addressing only post-suit conduct with respect to its indirect and willful infringement claims.

**SO ORDERED.**

**SIGNED: October 22, 2026.**

JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE